**NEW JERSEY ENVIRONMENTAL FEDERATION, a not-for-profit corporation, Plaintiff,**

v.

**WAYNE TOWNSHIP, a Municipal corporation, Defendant.**

**Civ. No. 01–1586(WGB).**

United States District Court, D. New Jersey.

March 16, 2004.

---

Koppelson & Westreich by Robert D. Westreich, Esq., Morristown, NJ, for Plaintiff.

Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, P.C. by Robert L. Povney, Esq., Marianne C. Tolomeo, Esq., Cissy M. Rebich, Esq., Newark, NJ, for Defendant.

## OPINION

BASSLER, District Judge.

Plaintiff New Jersey Environmental Federation ("NJEF" or "Plaintiff") moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendant Wayne Township ("Wayne" or "Defendant") opposes the motion. Plaintiff also moves to amend the Complaint, pursuant to Fed.R.Civ.P. 15(d), to include in any calculation of damages the period of time since the date Plaintiff filed the Complaint.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b).

For the reasons discussed below, Plaintiff's motion to amend the Complaint is **GRANTED,** and Plaintiff's motion for partial summary judgment is likewise **GRANTED.**

## BACKGROUND

This case involves the constitutionality of a Wayne ordinance requiring door-to-door canvassers who solicit for donations or sales to obtain a permit from the Chief of Police of Wayne that restricts those groups from canvassing during evening hours.

NJEF is the New Jersey chapter of Clean Water Action, a not-for-profit, grassroots organization engaged in environmental advocacy. NJEF disseminates information on issues of public interest by door-to-door canvassing throughout New Jersey. Canvassing provides NJEF the opportunity to both encourage political action in support of the causes for which it

advocates, as well as raise funds for NJEF activities. The work of NJEF's canvass is self-supported, in that the donations solicited during the canvass are the principal source of funding used by NJEF to support any educational or advocacy efforts conducted during the course of the canvass. (Goldsmith Cert. ¶ 4.)

NJEF usually conducts its canvassing activities between 4:00 p.m. and 9:00 p.m., Monday through Friday, throughout the year. (*Id.* ¶ 5.) Through years of canvassing in hundreds of municipalities all over New Jersey, Plaintiff has found that these hours represent the times that residents are most likely to be at home. Furthermore, Plaintiff claims it is necessary to canvass until 9:00 p.m. every night in order to sustain the costs of the canvass. (*Id.* ¶ 7.)

Defendant Wayne is a municipal corporation located in Passaic County, New Jersey. In Spring 2001, Plaintiff contacted Defendant and expressed interest in canvassing in Wayne. Plaintiff was then alerted to the existence of an ordinance that required organizations wishing to conduct door-to-door canvassing or solicitation in Wayne to obtain a permit prior to conducting these activities. (Pl. Br. in Support, Ex. B., Code of Township of Wayne, Ordinance No. 66, Chpt. 60) (hereinafter "the Ordinance").

Plaintiff objects to the general classification scheme included in the Ordinance, which outlines those groups that are required to obtain a permit to conduct canvassing activities in Wayne and those groups exempt from this requirement. In the "Statement of Purpose" section, the Ordinance establishes four classes of potential canvassers that are exempt from the permit requirement. For the purposes of this action, the most notable exemption is that those persons engaged in "political

campaigning" are not required to obtain a permit from Wayne before commencing door-to-door canvassing. (*Id.* § 60–1(B)(4).)

Section 60–2 of the Ordinance requires that individuals and groups conducting "Commercial Soliciting and [ ] Canvassing" must obtain a permit for those activities.

> No person shall canvass, solicit in any public or quasipublic place or call from house to house in the township or sell goods by sample or take orders for future delivery, or sells [*sic*] services or takes [*sic*] orders for the performance of services, whether or not he receives advance payments for goods, unless he first receives a written permit from the Chief of Police as provided herein.

(*Id.* § 60–2.)

The two sections of the Ordinance that follow § 60–2 outline the procedure for permit application (§ 60–3) and the requirements for issuance and exhibition of the permit (§ 60–4). Section 60–3 contains a limitation on the duration of the canvass. In Spring 2001, when Plaintiff first contacted Wayne, the Ordinance stated that the "[l]ength of time for which the permit is required shall not be more than two times a year, not to exceed seven days each time." (*Id.* § 60–3(A)(5).)[1] Therefore, the Ordinance limited the duration of door-to-door commercial solicitations by any permit holder to a total of two weeks during a calendar year.[2]

Section 60–5 of the Ordinance outlines the permit requirements for those groups engaged in "Non–Profit Soliciting." (*Id.* § 60–5.) Section 60–5(A) states:

> The provisions of this section shall apply to any individual, organization, society or association desiring to canvass, solicit or have solicited in his name money, donations of money or financial assistance of any kind or merchandise for which a fee is charged or solicited at any place or places within the Township of Wayne for a charitable, religious, civic, philanthropic or political purpose. Such individuals or entities shall provide a sworn application in writing with the Township Clerk and approved by the Township Council and Chief of Police....

(*Id.*) Unlike the permit requirements outlined in Sections 60–2 through 60–4 of the Ordinance, which deal with commercial solicitations, § 60–5 addresses the permit requirements for those non-profit and charitable groups who canvass or solicit for donations.

The application procedures and standards for issuing a permit to non-profit groups, as outlined in § 60–5, are similar, but not identical, to the requirements for commercial soliciting in §§ 60–3 and 60–4. Upon applying for a permit pursuant to § 60–5, applicants must provide the Chief of Police with: (a) the purpose of the

---

**1.** This provision has since been amended, as discussed in further detail *infra.*

**2.** There are various other requirements outlined in §§ 60–3 and 60–4. Section 60–3 mandates that an applicant must file the permit application two weeks prior to the date of solicitation, and that application must include, *inter alia*, the name of the applicant, nature of the merchandise to be sold, and name and address of the firm represented. Section 60–4 states that the Chief of Police will grant the permit application "[a]fter due

investigation and upon being satisfied that the applicant is of a good moral character and that he is canvassing or soliciting for a project free from fraud or other criminal purpose." (*Id.* § 60–4(A).) In addition, § 60–4 requires that each permit holder attach a copy of the permit holder's photograph to the permit and display the permit at all times while conducting canvassing activities. Finally, § 60–4 requires that the permit holder advise the Police Department daily of the locations he or she plans to canvass on that particular day.

organization or cause for which the permit is sought; (b) the names and addresses of the officers and directors of the organization applying for the permit; (c) the period during which the solicitation will take place; and (d) the name and address of each individual who will conduct solicitation on the organization's behalf. (*Id.* § 60–5(A).) Unlike § 60–3, there is no requirement for non-profit organizations to apply for the permit two weeks prior to the date of solicitation.

Furthermore, pursuant to § 60–5, a permit will be issued only if the Chief of Police is "satisfied that such person, organization, society or association is a bona fide religious, charitable, civic, philanthropic or political organization and free from fraud, and that the agents or representatives who shall conduct the solicitations are of good moral character . . . ." (*Id.* § 60–5(B).) Like the restrictions on commercial canvassing, § 60–5(B) limited the length of the permit issued to non-profit organizations to "no more than two times a year, not to exceed seven days each time" for a total of two weeks in a calendar year. (*Id.*)

Finally, § 60–5(C) requires non-profit permit holders to prominently display the permit while conducting door-to-door solicitations and to advise the Police Department daily of the locations that the permit holder plans to canvass that particular day.

In addition, at the time Plaintiff contacted Wayne in Spring 2001, the Ordinance contained a provision permitting all permit holders to canvass only between the hours of 10:00 a.m. and dusk. (*Id.* § 60–7(B)) ("No persons subject to the provisions of this chapter shall canvass, solicit or peddle, except during the hours between 10:00 a.m. and dusk, Monday through Sunday,

unless by express invitation of the resident.").[3]

Plaintiff did not apply for a permit to canvass in Spring 2001 and did not conduct any canvassing activities in Wayne. Instead, on April 2, 2001, NJEF filed a Complaint in this Court alleging that Wayne's canvassing Ordinance contained "provisions that substantially burden and interfere with the right of Plaintiff and others to canvass door-to-door." (Compl. ¶ 6.) Highlighting the dusk curfew and the two-week limitation on canvassing, Plaintiff alleged that Wayne's "arbitrary, burdensome, and selective restrictions on door-to-door canvassing by advocacy organizations violate the First and Fourteenth Amendments of the United States Constitution and 42 [U.S.C. § ] 1983." (*Id.* ¶ 11.)

On December 5, 2001, the Wayne Township Council adopted an amendment to the Ordinance, which, in part, amended § 60–7(B). (Hoeland Cert. ¶ 3, Ex. A) (the "Amendment"). Section 60–7(B) was amended to read: "No persons subject to the provisions of this article shall canvass, solicit or peddle, except during the hours between 10:00 a.m. and one-half hour after sunset, Monday through Sunday, unless by express invitation of the resident." (*Id.*) Therefore, where the Ordinance formerly required all permit holders to cease door-to-door activities at "dusk," the amended Ordinance requires permit holders to stop canvassing at a more specific hour, namely one-half hour after sunset.

In addition, the Amendment altered the requirements of § 60–3(A)(5), which had previously limited the length of time a commercial canvasser could solicit or canvass to two times per year, not to exceed seven days each time.[4] The newly adopted

---

3. This provision has since been amended, as discussed in further detail *infra*.

4. The Amendment actually lists the altered section as "§ 60–3(5)." (*Id.*) Given that there is no § 60–3(5) in the Ordinance, the Court

§ 60–3(A)(5) reads: "The required permit pursuant to this article shall be valid for a period of 60 days and may be renewed for additional 60–day periods." (*Id.*) Therefore, it is clear that those permit holders who obtain permits for commercial canvassing may now conduct door-to-door solicitations for a 60–day period, and may renew the permit for another 60 days an indefinite number of times.

However, it is unclear on the face of the Amendment whether the Amendment altered the provisions of § 60–5(B) as well. Again, § 60–5(B), which applies to non-profit canvassers, outlined a similar two-week limitation to the duration of canvassing for permit holders conducting canvassing on behalf of a non-profit or charitable organizations asking for donations. Both parties proceed under the assumption that the Amendment altered the validity for *all* permits obtained under the Ordinance to a duration of 60 days, renewable for additional 60–day periods. (*See generally* Pl. Reply Br., at 6; Def. Br. in Opp., at 1, 3.) The Court is inclined to agree with the parties' interpretation of the Amendment, given that the language in the Amendment states: "The required permit pursuant to this *article* shall be valid for a period of 60 days...." (Hoeland Cert. ¶ 3, Ex. A.) Therefore, although the Amendment only notes a change in the duration of permits procured pursuant to § 60–3(A)(5), this Court agrees with the parties' interpretation that the Amendment in fact altered the requirements for all permits obtained pursuant to the Ordinance.

assumes the proper section to which the Amendment refers is § 60–3(A)(5).

5. The Non–Solicitation List Ordinance was also amended on December 5, 2001. (Hoeland Cert. ¶ 3, Ex. A.) The Amendment provided that once a transfer of ownership had taken place for a residential property, the Township Clerk shall remove the premises

Beyond the Ordinance requiring certain canvassers to obtain a permit from Defendant, there is another ordinance that has some bearing on this case. (Code of Township of Wayne, Ordinance No. 37, Chpt. 60, § 60–8.2) (hereinafter "Non–Solicitation List Ordinance"). The Non–Solicitation List Ordinance provides that, after supplying their address to the Township Clerk, Wayne residents may notify the Clerk that canvassing and solicitations are not permitted on their premises. The Clerk then submits the non-solicitation list to the Chief of Police, who distributes the list to those individuals or groups applying for a canvassing permit pursuant to the Ordinance. The permit holder is prohibited from canvassing or soliciting at any address on the non-solicitation list.[5]

The parties conducted discovery in this case. Plaintiff thereafter moved for partial summary judgment and, subsequently, to amend the Complaint. The Court considers both motions in turn below.

## DISCUSSION

### I. Plaintiff's Motion to Amend the Complaint

On January 24, 2004, Plaintiff moved to amend the Complaint, pursuant to Fed.R.Civ.P. 15(d), to include alleged violations from the time the original Complaint was filed through the calendar year 2003. Defendant sent a letter to the Court dated February 26, 2004, in which Defendant indicated it had no objection to Plaintiff's motion to amend.[6]

from the non-solicitation list. (*Id.* ¶ 60–8.2(C).)

6. However, Defendant's February 26th letter did request that the Court allow additional discovery, given that Plaintiff's alleged damages may have changed during the course of the 2003 calendar year.

Given that such an amendment alters neither the substance of this action nor the legal issues before the Court, Plaintiff's motion to amend the Complaint is hereby **GRANTED.** Accordingly, this Court will consider any alleged violations from the date NJEF filed its initial Complaint through the end of calendar year 2003, and the First Supplemental Complaint submitted by Plaintiff shall be deemed filed.

## II. *Standard for Summary Judgment*

Summary judgment is appropriate only if there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). The applicable substantive law determines whether or not a fact is material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505 (citation omitted). "In making this determination, all of the facts must be reviewed in the light most favorable to, and all inferences must be drawn in favor of, the non-moving party." *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.,* 264 F.3d 302, 305–306 (3d Cir.2001) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

### A. Local Civil Rule 56.1

■ "On motions for summary judgment, each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L.Civ.R. 56.1. Upon serving its motion for partial summary judgment on opposing counsel, Plaintiff failed to submit a 56.1 Statement in compliance with L.Civ.R. 56.1. Defendant highlighted Plaintiff's omission in its opposition brief and argued that Plaintiff's motion was procedurally defective.

Plaintiff included a L.Civ.R. 56.1 Statement with its reply brief. Plaintiff listed one fact therein: "The only door-to-door political canvassers restricted in their access to Wayne's citizens are those who seek financial support in addition to political support for their causes." (Pl. Stat. of Mat. Facts ¶ 1.) Plaintiff claimed its L.Civ.R. 56.1 Statement was inadvertently omitted from the papers initially served on Defendant and consented to any time needed by Defendant to prepare and serve a responsive L.Civ.R. 56.1 Statement. (Pl. Reply Br., Ex. A.)

■ Although typically the Court requires a movant to include a L.Civ.R. 56.1 Statement with his or her moving papers, failure to do so may be excused where there is no evidence of bad faith. *See Fowler v. Borough of Westville,* 97 F.Supp.2d 602, 606–607 (D.N.J.2000). In this case, although Plaintiff's submission of a L.Civ.R. 56.1 Statement was belated, Plaintiff gave Wayne the chance to file a counter L.Civ.R. 56.1 Statement, and Wayne waived that right.

The Court will therefore accept the statement of fact included in Plaintiff's L.Civ.R. 56.1 Statement as undisputed. The Court finds that the current motion is not procedurally defective and will proceed with an analysis of the legal issues.

## III. *First Amendment Analysis*

### A. Parsing the Constitutional Claims

■ This Court notes at the outset that Plaintiff's objections to the Ordinance are general in nature. Although Plaintiff highlights sections of the Ordinance that it believes violate First Amendment principles, Plaintiff does not present, nor does Defendant defend, its arguments in terms of individual provisions of the Ordinance. This Circuit has

rejected this global approach and requires courts instead to examine provisions of the regulation individually. *See Gannett Satellite Info. Network, Inc. v. Berger,* 894 F.2d 61, 66 (3d Cir.1990) (holding that a First Amendment challenge that "conflates four distinct regulatory elements into an amorphous whole ... needlessly obscures the first amendment issues" and the court would instead "subject each component ... to independent constitutional scrutiny"). Therefore, wherever possible, the Court will attempt to parse the various provisions of the Ordinance and separately examine their constitutional validity.

Furthermore, Plaintiff brings its constitutional claims on behalf of itself, a non-profit advocacy organization, and on behalf of all advocacy organizations who wish to canvass in Wayne. (Compl.¶ 11.) This Court will only address Plaintiff's constitutional claims as to those applicable provisions of the Ordinance, namely § 60–5 (requiring a permit for all charitable organizations that solicit donations) and § 60–7(B) (curfew limitations on permit holders).[7] The permit duration limitation contained in § 60–5(B), which has been amended to allow for 60 days of canvassing, renewable indefinitely, is no longer an issue to which Plaintiff objects.

**B. The Activities Covered by the Ordinance Fall Under the Purview of the First Amendment**

■ The parties agree that Plaintiff's canvassing activities are considered speech and are therefore protected by the First Amendment.[8] Courts have traditionally afforded the highest level of First Amendment protection to individuals or groups actively involved in handing out pamphlets or conducting canvassing. *See Watchtower Bible and Tract Soc. of New York, Inc. v. Village of Stratton,* 536 U.S. 150, 160–162, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002) (discussing history of door-to-door canvassing restrictions). Furthermore, even when pure canvassing is intertwined with solicitation for funds, those activities remain a form of protected speech. *Village of Schaumburg v. Citizens for a Better Env't,* 444 U.S. 620, 633, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) ("[O]ur cases long have protected speech even though it is the form of ... a solicitation to pay or contribute money.") (internal quotation marks and citations omitted); *Heffron v. Int'l Soc. for Krishna Consciousness,* 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) ("[First Amendment] protection is not lost because the written materials sought to be distributed are sold rather than given away or because contributions or gifts are solicited ....") (citations omitted). In fact, the Supreme Court has commented on the important role of canvassing—with or without requests for donations—to the dissemination of ideas.

[C]haritable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment. Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is

---

**7.** The Court will not address the constitutional validity of §§ 60–2 through 60–4, which address the permit requirements for those individuals and groups taking part in purely commercial activity, given that Plaintiff does not challenge those sections of the Ordinance.

**8.** The Ordinance does not provide definitions for the regulated activities, therefore this Court must make inferences as to the Ordinance's use of the terms "canvassing" and "soliciting." However, the Ordinance appears to use these two terms interchangeably.

characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease. Canvassers in such contexts are necessarily more than solicitors for money. Furthermore, because charitable solicitation does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services, it has not been dealt with in our cases as a variety of purely commercial speech.

*Schaumburg,* 444 U.S. at 632, 100 S.Ct. 826.

■ That being said, although canvassing and solicitation are protected activities under the First Amendment, it does not follow that such activities are immune from any form of governmental regulation. In determining whether a certain restriction on speech passes First Amendment muster, a court must first look at whether the regulation in question is content-based or content-neutral. This determination will then dictate the standard of review the court must use in analyzing the facts presented.

■■ Within the purview of the First Amendment, courts have had little tolerance for those regulations based on the content of the speech in question. "[The Supreme] Court has held time and time again: 'Regulations which permit the government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment.'" *Forsyth Co. v. Nationalist Movement,* 505 U.S. 123, 135, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (quoting *Regan v. Time, Inc.,* 468 U.S. 641, 648–649, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984)) (other citations omit-

ted). When the regulation at issue is content-based, "that regulation is subject to 'the most exacting scrutiny.'" *Bartnicki v. Vopper,* 200 F.3d 109, 121 (3d Cir.1999), *aff'd,* 532 U.S. 514, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001) (quoting *Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988)) (other citations omitted). Courts will only uphold a content-based regulation in the rare instance when the regulation meets the demanding standards of strict scrutiny. *Id.* To meet this exacting standard, a court must find that the regulation is: (1) necessary to serve a compelling state interest; and (2) narrowly drawn to achieve that end. *Id.; Phillips v. Borough of Keyport,* 107 F.3d 164, 172 (3d Cir.1997).

■ By contrast, if the government regulation restricts speech in a content-neutral manner—such as a time, place and manner regulation—the restriction need only meet the level of intermediate scrutiny. *Ward v. Rock Against Racism,* 491 U.S. 781, 790–791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *Phillips,* 107 F.3d at 172 ("Regulations of speech that are regarded as content neutral … receive 'intermediate' rather than this 'exacting' or 'strict' scrutiny") (citations omitted).

■ Activities like those at issue in this action can be "subject to reasonable time, place, and manner restrictions." *Heffron,* 452 U.S. at 647, 101 S.Ct. 2559 (citation omitted); *Ward,* 491 U.S. at 790–791, 109 S.Ct. 2746. For a time, place and manner restriction to be valid, it must meet three criteria: (1) the restrictions must not make any reference to the content of the regulated speech; (2) the restrictions must serve a significant government interest; and (3) the restrictions must "leave open ample alternative channels for communication of the information." *Heffron,* 452 U.S. at 647–648, 101

S.Ct. 2559 (citations omitted); *Phillips,* 107 F.3d at 172.

Therefore, the Court must first determine whether the Ordinance in this case is content-based or content-neutral and then apply the appropriate standard of review.

## C. Determining Whether a Regulation is Content Based

■■■■■ The principal inquiry in determining whether a regulation is content-neutral or content-based, particularly when addressing time, place, manner restrictions, "is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward,* 491 U.S. at 791, 109 S.Ct. 2746 (citing *Clark v. Comm. for Creative Non–Violence,* 468 U.S. 288, 295, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)). "If the purpose behind the regulation is unrelated to the content of the expression, the regulation will be deemed neutral even if it has an 'incidental effect' on some speakers and not on others." *New Jersey Freedom Org. v. City of New Brunswick,* 7 F.Supp.2d 499, 506 (D.N.J.1997) (citation omitted). Therefore, the Court must look to the purported purpose behind the regulation and determine whether it is related to the content of the expression.

Courts have consistently found that where speech contains both outreach or canvassing protected by the First Amendment and commercial solicitation, the high-value speech is not eclipsed by the commercial speech. *Heffron,* 452 U.S. at 647, 101 S.Ct. 2559; *Riley v. Nat'l Fed. of the Blind of North Carolina, Inc.,* 487 U.S. 781, 796, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (holding where "the component parts of a single speech are inextricably intertwined, we cannot parcel out the speech, applying one test to one phrase and another test to another phrase.... [W]e apply our test for fully protected expression"); *Telco Comm'n, Inc. v. Barry,* 731 F.Supp. 670, 678 (D.N.J. 1990) (finding when the speech of a professional fundraiser at least partly concerns non-charitable matters, any limitations on that speech by the government are subject to the standard for evaluating pure charitable solicitation).

This case is analogous to *New Jersey Freedom Org. v. City of New Brunswick,* 7 F.Supp.2d 499 (D.N.J.1997). In that case, the Court invalidated, on First Amendment grounds, a city ordinance requiring a permit for any event at which 50 or more people were expected and for which admission fees were charged or contributions were solicited. *See id.* at 502–503. The Court found that the ordinance was content-based because the restrictions contained therein "depend[ed] upon whether the individual or group plans to participate in fund-raising, which has been determined to be constitutionally protected speech." *Id.* at 508 (citations omitted). Furthermore, the Court found that there was no relationship between the city's purported justification for the regulation-to minimize noise and boisterous behavior related to large gatherings-and the requirement that groups larger than 50 people obtain a permit if those groups planned on charging an admission fee. *Id.* at 508–509. The Court held that it was number of people gathered that affected a group's likelihood to be loud and boisterous, not the group's intention to charge admission. *Id.* at 509. Accordingly, the Court ruled that the restriction was not content-neutral and therefore unconstitutional.

In the case at bar, the registration scheme outlined in the Ordinance exempts certain canvassers from the permit requirement solely based on the content of their speech. Specifically, those individuals or groups involved in "political campaigning" are not required to obtain a

permit before conducting door-to-door canvassing. (Ordinance § 60–1(B)(4).) More importantly, only those non-profit and charitable groups "desiring to canvass, solicit or have solicited ... for money, donations of money or financial assistance" are required to obtain a permit before conducting their canvassing activities. (*Id.* § 60–5(A).) Therefore, charitable groups that canvass door-to-door and do not ask for donations or financial assistance are not required to obtain a permit under the Ordinance and are not subject to the restrictions contained therein.

Here, as in *New Jersey Freedom Organization,* Defendant's purported purpose behind the Ordinance is not wholly related to the content of the expression. Defendant attempts to justify the fact that the Ordinance contains no permit requirement for those persons taking part in political campaigning and places no restrictions on political campaigning after dark. As to the latter point, Defendant cites to deposition testimony and the Certification of Pamela Hoeland, Deputy Township Clerk of the Township of Wayne, arguing that: (1) political campaigners usually stop canvassing at dusk; (2) the period for political campaigning is limited, as local elections are held only in April, June and November; (3) political campaigning usually occurs on those weekends immediately preceding elections; (4) most political canvassers in Wayne are local residents, therefore they are more familiar with Wayne neighborhoods and road conditions; and (5) there is a risk of fraud inherent in solicitation that does not exist with respect to pure political campaigning. (Def. Br. in Opp., at 5, 12.)

Defendant spends the majority of its brief addressing the Ordinance's carve-out for political campaigning. However, Wayne articulates virtually no basis for why these same justifications apply to charitable organizations that do not solicit for donations yet do not apply to charitable organizations that do solicit for money.

In addressing this question, Defendant simply relies on the Supreme Court's decision in *United States v. Kokinda,* where the Court upheld a postal regulation banning solicitation on post office sidewalks. 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). The *Kokinda* Court found that the regulation at issue was content-neutral, even though it banned solicitation for funds while allowing other forms of First Amendment activity, such as leafleting, to proceed unrestricted. *Id.* at 736, 110 S.Ct. 3115.

*Kokinda* is inapposite for various reasons. A bulk of the *Kokinda* opinion addresses whether the sidewalk in question was a public forum. The Supreme Court found that since the sidewalk was located on Postal Service property, the regulation must be analyzed under the standards set forth for nonpublic fora. *Id.* at 730, 110 S.Ct. 3115. This standard is distinct from that applied in this case, where canvassers spend the majority of time on public streets. *Compare Kokinda,* 497 U.S. at 730, 110 S.Ct. 3115 (holding since the sidewalk is a nonpublic forum, the regulation "must be reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view") (internal quotation marks and citation omitted) *with Ward,* 491 U.S. at 791, 109 S.Ct. 2746 (holding that "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information")(internal

quotation marks and citation omitted). Both Plaintiff and Defendant agree, as does the case law addressing door-to-door canvassers and solicitors, that the type of activity at issue here falls under a public forum analysis for time, place, and manner restrictions. *See e.g., Stratton,* 536 U.S. at 161–165, 122 S.Ct. 2080; *Schaumburg,* 444 U.S. at 631–635, 100 S.Ct. 826. Therefore, the deferential standard used by the Court in *Kokinda* does not apply.

Furthermore, because *Kokinda* dealt with a nonpublic forum, much of the Court's discussion addresses issues involving potential congestion of the sidewalk, impediments to post office customers, and the disruptiveness inherent to financial solicitations by bystanders versus those simply passing out literature. *Kokinda,* 497 U.S. at 732–733, 110 S.Ct. 3115. These issues are not present in the current action.

■ .The Court agrees with Plaintiff's statement of this issue: "The result of Defendant's ordinance is, moreover, not only unconstitutional but perverse: wealthy groups that do not rely on canvassing to raise funds can canvass without limit, while causes that need to solicit both political and financial support are circumscribed in their access to the citizens of Wayne." (Pl. Br. in Support at 4.)

The primary means by which NJEF disseminates information about its causes is through canvassing. In addition, soliciting donations concurrent with its advocacy allows Plaintiff to support the cost of the canvass, as well as finance its operations as an environmental advocacy organization. Because NJEF must solicit dona-

tions at the same time it disseminates its views, the Ordinance requires NJEF to register with Wayne and obtain a permit to canvass. Furthermore, NJEF is restricted from canvassing one-half hour after sunset. This latter provision is particularly burdensome in the winter, when this means NJEF must cease its canvassing activities before 5:30 p.m. in the evening, making the cost of canvassing unsustainable. (Rebich Cert., Ex. A.) Conversely, those groups with enough funding to conduct broad door-to-door canvassing initiatives without needing to solicit funding are exempt from the requirements of the Ordinance.

Therefore, Section 60–5 of the Ordinance places undo restrictions on the speech of those non-profit, religious and charitable groups that must sustain their operations by asking for donations concurrently with their advocacy and community outreach.

For the foregoing reasons, the Court finds that § 60–5 of Ordinance is content-based, because it discriminates against types of speech depending on the content of that speech. The Ordinance places impermissible restrictions on political, religious, charitable and non-profit canvassers who ask for donations as part of their canvassing activities. Therefore, the Ordinance violates the First and Fourteenth Amendments. *See Rosenberger v. Rector and Visitors of the Univ. of Virginia.,* 515 U.S. 819, 828, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional") (citation omitted).[9]

---

9. As discussed above, once an ordinance is found to be content-based, it can be upheld only if it meets the strict scrutiny standard, that is, it is found to serve a compelling government interest and is narrowly tailored to achieve that interest. *Bartnicki,* 200 F.3d

at 121. Section D below considers the Ordinance as a content-neutral regulation and applies the appropriate intermediate scrutiny standard for time, place, and manner restrictions. Given that this Court finds that the Ordinance fails this intermediate standard of

## D. Time, Place and Manner Restrictions

■ As stated above, a valid time, place and manner restriction must be content-neutral, must serve a significant governmental interest, and must "leave open ample alternative channels for communication of the information." *Heffron*, 452 U.S. at 647–648, 101 S.Ct. 2559 (citations omitted). Even if, *arguendo*, the Ordinance in this action could be viewed as content-neutral, Defendant fails to show that the Ordinance meets the other two requirements for a permissible time, place and manner restriction.

### 1. The Ordinance Does Not Further a Significant Governmental Interest

■ Defendant argues the Ordinance furthers three important governmental goals: (1) protecting the safety of pedestrians; (2) protecting the privacy of residents; and (3) preventing crime and fraud. Although these assertions no doubt amount to significant governmental interests, "[t]he mere assertion of substantial government interests is not enough to satisfy the second [factor]" for valid time, place, manner restrictions. *New Jersey Citizen Action v. Edison Township*, 797 F.2d 1250, 1256 (3d Cir.1986). This Circuit has held that "regulations of door-to-door canvassing must be *precisely drawn* to serve the interests they are designed to further." *Id.* at 1255 (internal quotation marks and citations omitted)(emphasis in original). In other words, the restriction must be tailored so as not to "burden substantially more speech than is necessary to further the government's legiti-

mate interest." *Ward*, 491 U.S. at 799, 109 S.Ct. 2746.

Courts have not been hesitant to find that purported governmental interests, although compelling, do not justify sweeping bans on speech. *E.g., City of Cincinnati v. Discovery Network*, 507 U.S. 410, 424, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (holding "[n]ot only does Cincinnati's categorical ban on commercial newsracks place too much importance on the distinction between commercial and noncommercial speech, but in this case, the distinction bears no relationship *whatsoever* to the particular interests that the city has asserted") (emphasis in original); *Schaumburg*, 444 U.S. at 636, 100 S.Ct. 826 (requirement that charitable solicitors use seventy-five percent of funds collected for charitable purposes only "peripherally promoted" the city's interest in "protecting the public from fraud, crime and undue annoyance"); *New Jersey Freedom Org.*, 7 F.Supp.2d at 509–510 (finding no logical relationship between the city's asserted interests in reducing noise and the requirement for groups larger than 50 people to obtain a permit for those events that charge admission).

Therefore, in order to meet this second factor of the time, place, and manner test, Defendant must show not only are the bases for the Ordinance compelling governmental interests, but that the Ordinance furthers those interests.

### a. Safety

■ Protecting the safety of its citizens, particularly pedestrians, is no doubt a significant governmental interest. However, the Court agrees with Plaintiff that

review, it would necessarily fail the strict scrutiny review applied to content-based regulations. *See New Jersey Freedom Org.*, 7 F.Supp.2d at 509. Therefore, for the sake of

brevity, the Court shall forego a detailed strict scrutiny analysis and shall move on to a discussion of the Ordinance as an arguably content-neutral regulation. *Id.*

the Ordinance, as written, does nothing to further that interest.

The curfew outlined in the Ordinance has now been amended to allow licensed canvassers to conduct door-to-door solicitations only between the hours of 10 a.m. and one-half hour after dusk. Defendant spends a portion of its brief discussing the case law surrounding permissible curfews imposed on canvassers. Wayne justifies its curfew with the assertion that because many of the streets in Wayne are unlit and have no sidewalks, the curfew is necessary to protect canvassers from traffic accidents.

However, Plaintiff correctly highlights that the curfew applies *only* to those canvassers who have obtained a permit to canvass pursuant to the Ordinance. Therefore, political campaigners, as well as charitable organizations not asking for donations, could canvass well into the night.

Defendant attempts to explain this discrepancy by claiming that political campaigners usually stop canvassing at dusk, and most political canvassers in Wayne are local residents and are therefore more familiar with Wayne neighborhoods and road conditions. However, Defendant gives absolutely no justification for why the safety of non-profit and charitable canvassers turns on whether or not they solicit for donations. If the curfew provision, as Defendant asserts, is meant to protect canvassers, then why does it not also apply to those individuals and groups not asking for donations? *See New Jersey Citizen Action,* 797 F.2d at 1256–1257.

Furthermore, Defendant's legitimate interest in protecting the safety of canvassers can be better served by less intrusive measures than prohibiting canvassing by permit holders after dusk. Wayne could require *all* canvassers to wear reflective clothing or carry flashlights, which would amount to a less restrictive means for achieving the same goal.

The Court finds that § 60–5 of the Ordinance, and § 60–7(b) as applied through § 60–5, is not precisely drawn to serve the government interest of protecting the safety of canvassers in Wayne.

b. *Privacy*

■ Defendant is correct that protecting its citizens' privacy is also a compelling governmental interest. However, the No-Solicitation List Ordinance, which allows Wayne residents to place their address on the do-not-solicit list, provides an adequate means to address the privacy problem. The Supreme Court has so held in various cases. *See Stratton,* 536 U.S. at 168, 122 S.Ct. 2080 ("[An ordinance] which provides for the posting of "No–Solicitation" signs ..., coupled with the resident's unquestioned right to refuse to engage in conversation with unwelcome visitors, provides ample protection for the unwilling listener") (citing *Schaumburg,* 444 U.S. at 639, 100 S.Ct. 826 ("[T]he provision permitting homeowners to bar solicitors from their property by posting [no-solicitation] signs ... suggest[s] the availability of less intrusive and more effective measures to protect privacy")). Requiring a permit does nothing to abate "[t]he annoyance caused by an uninvited knock on the front door." *Stratton,* 536 U.S. at 168–169, 122 S.Ct. 2080. In addition to participation in the provisions of the No–Solicitations List Ordinance, Wayne residents are also permitted to post "No–Solicitation" signs on their property.

Moreover, as discussed in detail above, the Ordinance does not require political campaigners or those canvassers not soliciting funds to obtain a permit. Wayne gives absolutely no explanation as to why visits from those door-to-door canvassers are in any way less annoying or less of an

invasion of privacy than those by the individuals and groups required to obtain a permit under the Ordinance.[10]

Accordingly, the Court finds that although protecting its citizens' privacy is a compelling governmental interest, the Ordinance, as written, does not further that interest.

c. *Preventing crime and fraud*

▆▆ Wayne's purported intention to protect its citizens from crime and fraud, although a compelling governmental interest, is also not furthered by the Ordinance. Defendant produced the Certification of Lieutenant John Reardon of the Township of Wayne Police Department ("Lt. Reardon"). Lt. Reardon certified that, based on his 22 years as a police officer and his review of local burglary reports, burglaries are more likely to occur after sunset. (Reardon Cert. ¶ 7.) Defendant argues that curfew limitations help prevent crime in this regard, because less people will be walking the streets of Wayne after sunset. However, as with Defendant's attempt to justify the Ordinance on safety grounds, this argument falls flat. "[I]t seems unlikely that the absence of a permit would preclude criminals from knocking on doors and engaging in conversations not covered by the ordinance." *Stratton*, 536 U.S. at 169, 122 S.Ct. 2080. In other words, an individual who was intent on perpetrating a crime or fraud against a Wayne resident is unlikely to be deterred by the permit requirement outlined in the Ordinance. Such an individual could theoretically gain

entry into a Wayne resident's house by asking for directions or posing as a census taker. *Id.*

Furthermore, given that the curfew applies only to those canvassers who have obtained a permit to canvass pursuant to the Ordinance, political campaigners, as well as charitable organizations not asking for donations, are not subject to the curfew and are permitted to canvass at all hours. Defendant argues that there is a risk of fraud and crime inherent in solicitation that does not exist with respect to pure political campaigning. However, Defendant fails to provide any support for this contention. The Supreme Court noted in *Schaumburg* that, as here, there is "no indication that organizations [that engage in fundraising] are any more likely to employ solicitors who would be a threat to public safety than are other [canvassing] organizations." *Schaumburg*, 444 U.S. at 638, 100 S.Ct. 826. Therefore, the Court is unconvinced by Wayne's attempt to justify the Ordinance on this basis.

Given the foregoing, this Court finds that the distinction between charitable groups that solicit for donations and those that do not is unrelated to the interests asserted by Wayne. Accordingly, the Ordinance is not precisely drawn to further a significant governmental interest.

**3. The Ordinance Does Not Leave Open Ample Alternative Means of Expression**

Incredibly, neither Plaintiff nor Defendant addresses the third element of the

---

**10.** In fact, the canvassers exempt from the Ordinance may well present more of an invasion of privacy than those canvassers who are soliciting for donations. The No–Solicitations List Ordinance mandates that the Chief of Police notify those canvassers subject to the permit requirements of the Ordinance about Wayne households that have subscribed to the no-solicitations list. (No–Solicitations List Ordinance § 60–8.2(B).) There is no require-

ment that those canvassers exempt from obtaining a permit be notified of households participating to the no-solicitations list. Therefore, political campaigners and nonprofit and charitable canvassers who are not asking for donations are *more likely* to go to the homes of Wayne residents who have specifically voiced their opposition to these visits by signing up for the non-solicitations list.

test for time, place and manner restrictions. Valid regulations of this kind must provide ample alternative channels for communication. *Ward,* 491 U.S. at 791, 109 S.Ct. 2746. Since the Ordinance is neither content-neutral nor does it further a significant governmental interest, it is not necessary for the Court to investigate whether the Ordinance leaves open alternative means of communication.

However, even if the Ordinance did meet the other two factors of the test, it would fail this third factor. Of course, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron,* 452 U.S. at 647, 101 S.Ct. 2559. An alternative mode of communication is constitutionally inadequate, however, if the speaker's "ability to communicate effectively is threatened." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 812, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

Plaintiff asserts that without the ability to solicit donations during its door-to-door canvassing campaigns, it will not be able to garner the financial support to continue its advocacy activities. Therefore, NJEF's speech, which is clearly protected by the First Amendment, will be silenced by the Ordinance. For this reason, the Court finds that the Ordinance does not leave open ample alternative means of expression.

### E. Section 60–5 of the Ordinance Places an Impermissible Prior Restraint on Speech

Although Plaintiff does not explicitly argue that § 60–5 of the Ordinance amounts to prior restraint on speech, because the Ordinance does just that, the Court will address this issue.

A prior restraint on speech comes into play when the government conditions an individual's right to speak upon the prior approval of government officials. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). For a prior restraint, such as the licensing scheme in this case, to avoid infringing on First Amendment principles, it must meet the appropriate level of scrutiny and must contain "narrow, objective, and definite standards to guide the licensing authority." *Id.* at 151, 89 S.Ct. 935; *Nationalist Movement,* 505 U.S. at 131, 112 S.Ct. 2395.

A recent opinion from the Northern District of Ohio is instructive, given that the factual background is nearly identical to this case. In *Ohio Citizen Action v. City of Mentor–on–the–Lake,* 272 F.Supp.2d 671 (N.D.Ohio 2003) (hereinafter "*O.C.A.*"), a non-profit environmental advocacy group brought a § 1983 action against the city alleging that the city's ordinance regulating solicitation and canvassing violated the First Amendment. On the plaintiff's motion for partial summary judgment, the Court found, *inter alia,* that the city's ordinance violated the First Amendment, the ordinance's licensing provisions were an invalid prior restraint on speech, and the curfew provisions were content-based and facially invalid as an improper restriction on free speech. *Id.* at 674–675.

The ordinance at issue in *O.C.A.* is similar in many ways to the Ordinance in the present action. The *O.C.A.* ordinance required that those person engaged in "canvassing and/or soliciting and/or selling" merchandise door-to-door were required to obtain a license from the city. *Id.* at 675. In order to obtain the license, groups and individuals were required to pay a fee and submit to a background check, including photographs and fingerprints. *Id.* The ordinance also listed persons and groups ex-

empt from paying the license fee and submitting to the background check, but not from obtaining the license. This exempted group included "[d]uly authorized solicitors on behalf of any educational, charitable, civic religious or other nonprofit organization." *Id.* at 676. Finally, the ordinance outlined specific limitations on the hours that groups were permitted to canvass, based at least partially on the purpose of the canvassing campaign. *Id.*

The *O.C.A.* decision addressed the recent holding by the Supreme Court in *Watchtower Bible v. Village of Stratton,* 536 U.S. 150, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002). In *Stratton,* the Supreme Court invalidated an ordinance that required a group to obtain a license prior to conducting neighborhood canvassing when the purpose of the canvassing was to advocate or engage in political or religious speech. *Id.* at 160, 169, 122 S.Ct. 2080. The ordinance in *O.C.A.* covered both those canvassers soliciting for funds as well as those not asking for donations. Both the parties agreed, and the Court found, that *Stratton* invalidated the portion of the *O.C.A.* ordinance restricting canvassers who did not ask for donations. The *O.C.A.* Court was therefore left with the same question at issue in the this action: Do restrictions against organizations based on the singular fact that they are soliciting for donations violate the First Amendment?

The Court in *O.C.A.* found that such a regulation did contravene established First Amendment principles. The Court held: "[T]he prohibition against requiring the licensing of charitable organizations who wish to go door-to-door in an informational or advocacy campaign, as set forth in *Stratton,* must apply equally to charitable organizations who incorporate the solicitation of funds for their cause during such

campaigns, and to those who do not." *O.C.A.,* 272 F.Supp.2d at 680.

Like the Ordinance this case, the *O.C.A.* ordinance listed good moral character and integrity as factors to be taken into account by the licensing authority. The *O.C.A.* Court found that "when a license is conditioned merely upon a showing of 'good moral character,' it grants the licensing authority an impermissible level of discretion." *O.C.A.,* 272 F.Supp.2d at 682 (citation omitted). The Ordinance in the current case mandates that the Chief of Police will only issue a permit "upon being satisfied that such person, organization, society or association is a bona fide religious, charitable, civic, philanthropic or political organization and free from fraud, and that the agents or representatives who shall conduct the solicitations are of good moral character." (Ordinance § 60–5(B).) The Ordinance does not define a "bona fide" organization and fails to explain the meaning of "good moral character."

Like the ordinance in *O.C.A.,* nothing in § 60–5 constrains Wayne from denying a license on any ground that it sees fit. Furthermore, the Ordinance fails to provide any minimum standards that must be met by groups applying for a license. *Nationalist Movement,* 505 U.S. at 131, 112 S.Ct. 2395. Accordingly, the Court finds that § 60–5 is an impermissible prior restraint on speech in that it allows Wayne unbridled discretion to deny or grant permits at it sees fit.

### CONCLUSION

The Court concludes that § 60–5 violates the First Amendment because it is content-based and cannot satisfy strict scrutiny. However, even if it were content-neutral, the Ordinance does not meet the requirements for a valid time, place and manner restriction, because it does not further a significant governmental interest

**700**

nor does it leave open ample alternative means of expression. Since the Court hereby invalidates § 60–5, which requires all non-profit organizations to obtain a permit before partaking in door-to-door solicitation for donations, the curfew provision challenged by Plaintiff, outlined in § 60–7(B), is not enforceable as to Plaintiff and other non-profit, charitable, religious and political groups, because those groups are no longer required to obtain a permit to canvass in Wayne.

For the foregoing reasons, Plaintiff's motion to amend the Complaint is **GRANTED.** This Court finds that § 60–5 of the Code of the Township of Wayne (Ordinance No. 66, Ch. 60) violates the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Accordingly, Plaintiff's motion for partial summary judgment is **GRANTED,** and Wayne is hereby prohibited from enforcing the offending provisions. A hearing shall be set to determine Plaintiff's damages.

An appropriate order follows.